Not as many people excited about this case. I don't understand. The brave new world of diversity jurisdiction. Okay, go for it. May it please the Court, Jennifer LaGrange, on behalf of Appellant Finsa, I would like to request three minutes for rebuttal. Finsa respectfully requests that this Court reverse the District Court's orders and remand and allow Finsa lead to file an amended complaint. The District Court erred in conducting three analyses at issue and appeal. Form nonconvenience, denial of leave to amend, and denial of reconsideration. As for form nonconvenience, the District Court erred in dismissing this case in favor of arbitration in Mexico because Mexico is not an adequate alternative forum to hear this dispute. An adequate alternative forum generally requires two things. First, that all defendants be subject to service of process in the alternative jurisdiction. And second, that the entire case and all parties come within that forum's jurisdiction. Counsel, have you tried serving the other side? We reached out to them and asked if they would stipulate to jurisdiction in Mexico. That's different. Have you tried serving them? Not tried serving them. You asked them in an e-mail whether they would be amenable to stipulating to jurisdiction, but you didn't try serving them. Correct, Your Honor. So how do we know that they're not subject to Mexico's jurisdiction? Mexico typically exercises jurisdiction in one of three circumstances. The first is physical presence in Mexico. We don't have that here. OpenGate is a California LLC with its headquarters in Century City. Second is consent. We were not able to get that. And third is that the events occur in Mexico. We don't have that. In this case, it was California-based OpenGate that purchased the property and then sold it to Finso without disclosing its ongoing U.S. litigation. It negotiated this deal. Well, OpenGate was a parent company, right? They're not on the sale. OpenGate is the entity that actually engaged in the transaction. Right. You're going to have some claims about who are the real party and interests, and you've got some piercing of veils and things like that because you've got a fairly complex corporate structure there on the other side. But you haven't – I'm not sure that I've seen where – once you accept that there are various corporate levels there, that may cut both ways. That is, it may cut in their favor in certain circumstances, but it may cut in your favor too if you go to Mexico and say, look, these guys may not be the signatories on this consent to jurisdiction here, but these are the real parties in interest. Well, we have no evidence that Mexico will actually exercise jurisdiction. But you haven't tried it yet. We did ask them to consent, Your Honor, and if I may – No, you haven't tried it in Mexico. You haven't sought the assistance of the Mexican courts. Well, Your Honor, even if we were to consent, there are three problems. Even if OpenGate were to consent, there would be at least three problems. First is that we have two mandatory and conflicting form selection clauses, one which requires purported lease-related claims to be sent to Tamaulipas Courts, and one which requires purported guarantee-related claims to be sent to Mexico City Arbitration. This places the court in the position of having to – But they're both Mexican. Both of those clauses relate to proceedings that should occur in Mexico, correct? And so that's why it seems appropriate for a Mexican court to – Not in Mexico, Your Honor. The lease requires claims to be brought in Mexico City Arbitration, the equivalent of Washington, D.C., for Mexico, and the lease requires claims to be brought in Tamaulipas Courts, which is in the state of Reynoso, Mexico. So it's a completely – They're both in Mexico. They are both in Mexico. That was what I just said. They are both in Mexico. So what effect does that have when the contractual party was also a Mexican subsidiary? I'm glad you raised that, Your Honor, because OpenGate is the entity that negotiated this deal, and OpenGate selected the Mexican subsidiary to sign the agreements. And I know that OpenGate's strongest argument for Mexican jurisdiction is that the Mexican subsidiary signed two of these three agreements, but there are four problems with that argument. The first is that even the Mexican subsidiary uses a California address to conduct business. That's in the record at ER 113. But it is, in fact, a Mexican subsidiary, right? They claim that it's a Mexican subsidiary, but in executing the letter of intent, they at the last minute changed the signature block to an entity that doesn't appear on its organizational charts, an entity whose name doesn't exist. And the only address of record to do business with the Mexican subsidiary is OpenGate's Century City address, and that's in the record at ER 113. Counsel, I would think that if you actually went to the Mexican courts and made the allegations that you've made here, we have no way of knowing whether your claim is correct. There's some horrendous fraud that's gone on here. You'd think, just my intuition says, never having appeared in a Mexican court, the Mexican courts might have a great deal of interest in trying to sort out fraud in Mexico. You're right, Your Honor, but here's a huge hurdle that we face. In order for FINSA to get relief against OpenGate, now remember, OpenGate has FINSA's $15 million. It has declared all of its U.S. subs bankrupt, and we know from the bankruptcy filings that they only have $40 to their name. We would have to be able to go to Mexico and seek some sort of piercing of the corporate veil, recognition of FINSA's fraud claims, and it was OpenGate's burden to prove that all of that is available in Mexico, and they did not make that showing. The district court said that OpenGate did not need to make that showing based on the Atlantic Marine analysis. But Atlantic Marine applies only when there are parties to a contract containing a form selection clause. So Atlantic Marine holds two things relevant to this analysis. The first is that the presence of a contract containing a form selection clause shifts the burden to the party resisting enforcement to prove why transfer is unwarranted. Wait, I want to make sure I follow your Atlantic Marine argument. You're suggesting that Atlantic Marine only applies where the signatory party is resisting? No, no. What I'm saying, Your Honor, is that the premise of Atlantic Marine, and this is set forth in the Supreme Court's footnote 5, is the existence of a contract between the parties containing a form selection clause. And the first way it alters the traditional form nonconvenience analysis is that it shifts the burden to the party resisting enforcement to prove why transfer to its own preselected form is unwarranted, the theory being that if the party bargains for and receives consideration in exchange for a form selection clause, it should have to prove why transfer is unwarranted. The second way Atlantic Marine changes the analysis, which is relevant here, is it allows a court to bypass private interest considerations in the form nonconvenience analysis, the theory being that if a party bargains for a form selection clause, it waives the right to argue the inconvenience for itself and its witnesses. But here we do not have the fundamental prerequisite, which is the existence of a contract between these parties. FINSA seeks to recoup its $15 million. That lies with Open Gates and Open Gates bank accounts in the U.S. Clearly not with its subs, which are in bankruptcy and not with the sham sub that it used to execute the sorry, that it used to execute the contracts in Mexico. And if I may go back, I wanted to highlight in the record the Mexican sub uses the California address that's in the record at ER 113, 197, 207 and 216. The second problem with that argument is that the person who executed all of the Mexican subsidiary was a California-based Open Gate employee. Counsel, I, you, you, you're arguing very vigorously that for all the reasons why we shouldn't send this, send this to Mexico. I'd like to flip it just a little bit. I'd like you to tell me why, if we were to affirm the district court, that the district court still has tools available for your client to be able to to, to make its, its forum, non judgment effective. The best tool, the district court would have had, although it denied it was a conditional dismissal. Then why aren't you asking us to tell the district court? We did actually in part of our appeal. Your honor is an appeal of the district court's denial of a conditional dismissal, even under the generous abuse of discretion standard. It was an abuse of discretion to deny a conditional dismissal in light of So does a conditional dismissal requiring of the defendant to accept service of process in Mexico solve all your problems? No, it does not solve all of the problems. Your honor, there are certainly meets the consent element of Mexican law. Yes, your honor. But there are several problems still. The first is that at the end of the day, form nonconvenience is about fairness to the parties, all of the witnesses and all of the evidence that Finza needs to prove its claims are in California. They are open gate employees. It's open gate documents. That's not in Mexico. Second, even if open gate consented to Mexican jurisdiction, it has not satisfied the two tests that it identified for non-signatory enforcement. Those tests were alter ego and equitable estoppel. Alter ego is only available for contract claims and Finza wants to proceed only on fraud claims. The site for that is Yang versus majestic blue fisheries, eight 76 F third nine, nine six Penn site one zero zero four from the ninth circuit, 2017. The second thing is that in order to rely on the alter ego doctrine, there needs to be a court finding that the non-signatory is an alter ego. We don't have that here. The site for that is Ben Arroyo versus Willis 23 Cal up fifth or 62 Penn site four 65 from the California court of appeals the year 2018. The second test that open gate started cited for non-signatory enforcement was equitable estoppel. The problem with that theory is that Finza's claims against open gate do not rely on or incorporate any underlying contractual obligations. We're not relying on their obligations under the contract to assert our claims. Our claims are based on their fraudulent conduct leading up to, and even after the sale lease back transaction, including but not limited to placing all of their subsidiary corporations in bankruptcy, placing them beyond the reach of us in court. And the second problem is that Finza does not. Sotomayor, I take it that open gate itself is not in bankruptcy. Correct, Your Honor. And the second problem. So if you brought this case in Mexico seeking to test jurisdiction, you'd have to be bringing the case in Mexico and saying, ah, but you actually don't have jurisdiction over this case. Correct, Your Honor. Which leaves Finza without a form. And again, at the end of the day, form nonconvenience is a discretionary doctrine that's concerned with fairness to the parties. And in this case, we would argue that it's completely unfair to require Finza to attempt jurisdiction in Mexico, especially after we've already requested consent and they've refused it. Did you want to save some rebuttal time? Yes, Your Honor. Thank you. Good morning. May it please the Court. Jeffrey Rosenfeld, as well as Gwen Alexander, and Jesse Steinbach of Alston and Byrd on behalf of the open gate appellees. Your Honor, the district, Your Honors, the district court was well within its discretion in ordering arbitration and dismissing the appellant's complaint. There's certainly no basis upon which to find an abuse of discretion, no less than the error. Appellants who are Mexican entities have and continue. Abuse of discretion with respect to the forum nonjudgment or with the failure to provide additional conditions when it granted forum non? It's interesting, Your Honor, that the opposing counsel has raised that, Your Honor, because there was a condition placed in the order on the motion for reconsideration. The court at the very end of its order said, in denying the motion for reconsideration appropriately, said in the event that the appellant cannot confer jurisdiction upon open gate in Mexico, they were entitled to come back to the central district and re-litigate their claims. Why is that a conditional dismissal as to service on open gate? The court didn't characterize it that way, Your Honor. How I interpreted that statement to be, the court's ruling in response to their claim, the appellant's claim that they could not confer jurisdiction upon open gate in Mexico, given the fact that they have never ever attempted to file anything in Mexico. So you make the argument that the consent withheld that plaintiff makes much of was just because plaintiff tried to include in the arbitration many more things than would be covered under the guarantee clause, right? Correct. So would you object to what would happen if the district court actually did condition dismissal on accepting service in Mexico? I guess we would have had to make a decision on whether or not we were willing to consent as part of the court's order. That was not what the court had ordered. And if you weren't, then would it stay in the U.S.? No, I don't believe so, Your Honor, because I think that there is an obligation, and I think the district court was pretty clear, an obligation on the part of appellants to at least attempt to confer jurisdiction in Mexico, which they have never have. To be clear, the record is that the appellants never asked to submit to service in Mexico. What they asked was simply whether open gate would submit all of its claims to arbitration. Right, I understand that. And the answer to that was no, because it was an ill-fated attempt to try and create a motion for reconsideration, which we saw coming. The answer is we were not obligated. And when I say we, open gate, and under the purchase and lease agreements has a forum selection clause as opposed to an arbitration provision. And they were not obligated to submit their claims to arbitration. They were entitled to their day in court, pursuant to the agreement of the parties, in Mexico. And that's what open gate intended to honor. If FINSA were to serve open gate, would open gate accept the service and proceed to court proceedings in Mexico? If what Your Honor is asking me is whether we would, well certainly they could serve us, whether we would challenge personal jurisdiction in Mexico, I don't know. It depends on what the facts are and further investigation. We never got that far. But at this point you're not making any proffers to the court as to how your client would respond to proper service in a Mexican court. No, we're not. And I think what the court said was that the proper place for this case to be filed, given that it's Mexican entities, Mexican real estate, Mexican law, was to comply with the agreements that the parties agreed to, which was bargained for, serve open gate in Mexico. And in the event that the appellants here were unable to confer jurisdiction over open gate, then they could come back to the central district and refile their case. What difference does it make that the claims sound in tort and not contract? None. And the reason is, Your Honor, under Ninth Circuit law, given the closeness of the relationship between the open gate, the parent, and the claims here, which are alter ego claims, and purely and simply, by the way, and for the record it's important to note, there are no allegations in the complaint that suggest, as counsel I believe was suggesting here today, that suggest that there was direct fraud from open gate to FINSA, or the FINSA entities that were contracting parties. The allegations are all alter ego and control issues. So they are not direct, they are indirect. Yeah. There's certainly enough in the complaint that if the allegations are true, your client and its subsidiaries have behaved very, very badly. Again, if it's true. I understand you haven't had your day in court on that one. Yes, Your Honor. What's a little ironic at this point, counsel, is that you've gone to the district court and said, you can't exercise jurisdiction over us and they've got to go to Mexico. You won't tell us today that you'll accept jurisdiction in Mexico, but you have said, well, if we don't agree to jurisdiction, the courts don't exercise jurisdiction, we can come back to the district court, which is who you told in the first place didn't have jurisdiction over you. So you've whipsawed us just a little bit. You've told the federal courts in the United States that they can't exercise jurisdiction, they should send it to Mexico. You won't tell us that the Mexican courts have jurisdiction and that if you fight it, then they might be able to come back successfully to the United States. And I understand, Your Honor. And we're not trying to be as clever as you've just described it. The way this started was that we were sued in Los Angeles for acts and events which clearly took place in Mexico, which were governed by agreements where, by the way, FINSA, the appellant, insisted on having foreign selection and arbitration provisions in Mexico, presumptively because that was their choice. They bargained for that. And so we sought to enforce their own provisions. Why they sit here today and clarify? Well, the reason is obvious because the parties with which they contracted are now bankrupt. They're not worth anything. The only thing they can do is get to the parent corporation that they didn't have a contract with, who's in the United States. And I understand that given the nature of the claims against the parent corporation, in this case the OpenGate, they have forced OpenGate into the shoes of the Mexican subsidiary through which it did business. And that subsidiary had an understanding and agreements for arbitration and foreign selection which the appellants themselves imposed. And if you look at the clear ruling in Atlantic Marine, the private interest factor, Your Honor, is not applicable. It's only public interests. And the public interests here, as are clearly briefed before you, have to deal with choice of law, which is Mexican law, administrative simplicity, which clearly is in Mexico, as well as the fact that Mexico has a vested interest in, as much as California, if not more, in this litigation from a public interest perspective. So all we have done is look to the U.S. Supreme Court to give us guidance on how it is that these clauses should be analyzed. They are valid and enforceable foreign selection clauses and arbitration provision. Against the parties that were signatories. That's true, Your Honor. That's not OpenGate. The only fashion in which they have sued us in this case was in the shoes of our own subsidiary, which is a signatory or signatories to the various agreements. Well, it seems like it's sort of the flip side of that. That is, if the subsidiary was a sham, then it is OpenGate, the parent, that is responsible. If OpenGate was in charge of the alleged fraud. I mean, you're flipping, I think, what Finza's argument is, as I understood it. I'm not sure I understood what Your Honor was saying. Here's the issue, though. They do not allege, Your Honor, that we induced the provisions at issue, the foreign selection clauses, as well as the arbitration provision, by fraud. They can't, because they drafted them and they insisted on them. No, no. I mean the underlying alleged fraudulent transactions. Yes, I'm sorry, Your Honor. And I guess I'm, if the court could clarify the question. You're trying to prevent OpenGate from having to go back, from having to be hauled into court in Mexico. I mean, actually, you've encouraged the district court to send OpenGate to Mexico and then test this. Correct. That really only works if you're willing to concede, and you may have stopped yourself judicially from denying that OpenGate is the proper successor in interest to the signatories. I don't, I respectfully disagree with that. I understand that you're going to disagree, because that's effectively what you told the district court, because if you're not, if you are not the successor in interest, if they can't pierce the veil, then they ought to be able to come into the United States, because they're not, because their contractual, their foreign selection clause arbitration provisions are not with you. They're with your subsidiaries. They've now pierced the veil. They want to pierce the veil and come to the United States and sue you for fraud. I think the distinction here, Your Honor, is that you do the analysis, as the court did here, based on the allegations, not on what is proved at the end of the day. The allegations are that we acted as through our subsidiary in an alter ego fashion, that the subsidiary was a mere instrumentality. That is their allegation. We didn't, I'm not admitting that. We don't admit any of the facts in the complaint. In fact, we intend to vigorously dispute and defend against all those claims. We have what we have. We base forum selection and arbitration on the allegations of the complaint. So all we did was go to court and say, here are the allegations, here are the provisions. Under an alletic marine, it requires you to send, as well as other authorities, to send the case, the cases to the proper bargain for venues, venue and also ADR venue. And we never, we didn't take the position, Your Honor, nor did the court ask us, whether or not ultimately we would be held accountable in the courts in Mexico. That's a separate issue. You know, whether or not there will be personal jurisdiction. Should the court have taken that into account before it decided the forum non? I don't believe so. I don't think it's one of the elements. And I don't think an alletic marine or any of the other authorities even addressed that issue. I don't think that's relevant yet. I think what's going to happen if. Did you file the forum non before you filed an answer? Yes. It was a part of a motion to dismiss, Your Honor. You haven't alleged any affirmative defenses yet? No, no, of course not. And it was a 1404A transfer. It has to be done pursuant to a motion to dismiss, which is what we did. The court granted the motion, denied their, rightfully so, their motion for reconsideration, because there weren't any new facts or law. And then we find ourselves before you find people. So would the district court have been within its authority to condition the dismissal for forum non convenience on the defendant accepting service of process in Mexico? I'm not sure I've actually seen any authority that addresses that issue specifically. I don't believe any of the authorities we did see or the court did consider would require that of the court, no.  Could the court? I think that's a question that I can't answer. I don't know the answer to that, Your Honor. And if the case were sent back to have that condition imposed, would open gate resist that? I don't have the answer for you, Your Honor, and that would be a discussion that I would have to have with my client. We never had that conversation because it wasn't germane to the motion and it wasn't necessary based on the lower court's ruling. So I don't know the answer to that. That's an honest answer. I just don't know. I think the issue before us, Your Honors, is why didn't they make, why did they not attempt to go to Mexico? Why did they not attempt, which, by the way, was their selected forum in the first place. Why didn't they try? They were given, they were told multiple times to try and they refused to try. I understand they think that all the witnesses are here. I would beg to differ with them. The issues and the events which took place were all in Mexico. This is regarding a production facility that was in Reynosa where there's allegedly- Pointfully located in Reynosa, yes? Yes, and the litigation is supposed to take place down there. And the witnesses, what happened, what transpired would all be down there. Yes, there would be some witnesses potentially here, but nothing extraordinary. And again, under Atlantic Marine, when you have valid forum selection provisions in private interests, are deemed to have been negotiated at the time of the contract, they are not a relevant consideration as the court duly found. With respect to arbitration, Your Honors, the court also properly found, and I'm blanking on the case, I think it's the Oracle case, that once you find that the parties have incorporated the AAA commercial rules, the issues of arbitrability are left to the arbitrator and the court properly refused to go any farther than that. So as to scope of the non-signatories being bound by the arbitration agreement, as well as the issues within the arbitration agreement are appropriately left for the AAA. And is there any service of process that comes into play with respect to arbitrations where there's been a finding that the parties agreed to an arbitration? I think the service of process in my experience under the AAA is that you basically file a petition with the AAA and then they contact you and you're off and running. I don't think you have the same issues that you do in a Mexican courthouse with long-arm jurisdiction statutes and things of that nature. And by the way, the evidence before the court is that there's nothing wrong with the judicial system of Mexico. It provides appropriate remedies. And the idea that somehow we wouldn't be, and this is not a stipulation on my part, but I don't believe that there's anything in the record, in fact I think it's quite to the contrary, that says that they couldn't serve, open gate, and litigate this case in Mexico in the proper form. With that said, Your Honors, I appreciate I'm running out of time, so I would just suggest that, Your Honor, we believe that the court properly decided this case based on Atlantic Marine as well as some other cases in the Ninth Circuit. There was no error. Your understanding of the district court's order is that there is no condition on the forum non-dismissal. That's my understanding. Are there any cases that would allow the district court to reopen or revisit that, even though it has not put on the record some kind of a reservation? I've never seen any authority that suggests that the court could do that. Are you talking about the district court or this court? The district court. I've never seen any cases that suggest that. Again, I think the court made an accommodation for the plaintiffs, the appellants in this case, by allowing them, in the event that they couldn't confer jurisdiction in Mexico, to come back to the central district and they'd have their day in court. But I think that's all for what happens down the line. I don't think that's what we're here to decide today. Thank you, Counsel. Thank you very much. Thank you, Your Honors. The first point I'd like to make is that a conditional dismissal will not solve the issues in this case. The only reason we get to form non-convenience dismissal in the first place is if non-party open gate can benefit from non-signatory enforcement of either the form selection or arbitration clauses. They've now refused to be bound by those clauses, and it is well settled that a party cannot attempt to claim the benefits of a contract while avoiding its burdens. So that should end the analysis. The second issue I'd like to revisit is an issue that we discussed earlier, Judge Bidey, which is that we would still need proof that Mexican law would recognize the types of claims that FINSO wants to bring against open gate. That was open gate's burden to present that information to the district court, and they did not meet that burden. And thirdly, as to the evidence being in Mexico versus the United States, we've alleged, and the documents show, including the judicial records, the judicial notice records, that that facility has been shuttered. It's completely shut down. All of the evidence and all of the witnesses that FINSA needs to prove the claims are in the United States. The second point I'd like to go to is arbitration. The district court held that the parties had delegated arbitrability to an arbitrator. In general, a court decides whether or not there's an agreement to arbitrate and the scope of that arbitration agreement. And it is true that parties can delegate even those two issues with clear and unmistakable evidence of an intent to do so. Most courts, including this one, have held that incorporating the American Arbitration Association rules is clear and unmistakable evidence of an intent to do so. But those rules on their face only speak to what happens to parties. That's in the record at ER 140. They are silent as to what happens with non-parties. Under this court's decision in Kramer, that is not sufficient to hold that the parties delegated arbitrability to an arbitrator. And the next point I'd like to make is the district court erred in balancing the public interest factors, which are required even under Atlantic Marine. As to the first factor, the local interest in hearing the dispute, California has a significant interest in providing a forum for non-residents like Finza, who were harmed by the actions of its corporate residents. In this case, any interest that Mexico might have is illusory, because OpenGate has not consented to jurisdiction there. We can't get them there. As to the second factor, the court's familiarity with the law, California law applies to Finza's fraud claims and favors a California forum. There is no controlling choice of law provision here, because OpenGate is not a signatory to a contract containing one, and even if it were, we have conflicting choice of law provisions. So a court would arbitrarily have to decide which one governs. In the absence of a controlling choice of law provision, federal courts will apply state law choice of law rules, in this case, California's governmental interest test. Under that test, OpenGate was required to identify all potentially applicable laws, show how they differ from California law, and show why the alternative jurisdiction has an interest in having its law applied that outweighs California's interest. In this case, OpenGate never made that showing. As to the question of whether or not this case is about the fraud of OpenGate subsidiaries versus OpenGate, the proposed amended complaint makes very clear Finza intends to go after OpenGate for its own fraudulent conduct. That fraudulent conduct is recorded in the record at ER 187 through 231, which contain all of the emails back and forth when the parties were negotiating the transaction. And just to sort of hit the high-level points, OpenGate is the entity that purchased and then sold the Reynoso facility without disclosing the ongoing litigation. It negotiated the deal via email from its headquarters in Los Angeles. It signed the nondisclosure agreement. It circulated a letter of intent outlining the deal terms and then chose a Mexican subsidiary to finally execute that deal. As I mentioned, the Mexican subsidiary operates out of a California address, and a California-based employee signed the agreements on behalf of that sub. OpenGate selected that sub, and at the end of the day, it was OpenGate that made the fraudulent representations and omissions that are at issue here. Thank you, counsel. Your time has expired. Thank you, Your Honors. The case just argued is submitted. We appreciate the helpful arguments from both counsel, and we are adjourned for this morning's session. All rise.
judges: Graber, Bybee, Arterton